**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **KYLIE GARNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-CV-0372-CVE-FHM** |
| | ) | |
| **ECONOMY SUPPLY, INC., an** | ) | |
| **Oklahoma corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is defendant Economy Supply, Inc.'s motion for partial dismissal of

plaintiff Kylie Garner's claim of intentional infliction of emotional distress. Dkt. # 9. Plaintiff

alleges that, over the course of her employment, defendant's general manager and another of

defendant's employees harassed plaintiff, causing her to suffer severe emotional distress. Dkt. # 2-1,

at 2-5. Defendant seeks dismissal of plaintiff's intentional infliction of emotional distress claim,

arguing that plaintiff failed to state a claim upon which relief can be granted under Federal Rule of

Civil Procedure 12(b)(6). Dkt. # 9, at 4.

## I.

Plaintiff's allegations are as follows. Plaintiff began her employment with defendant on

February 15, 2017. Dkt. # 2-1, at 2. On her second day of work, Tray Coffey, defendant's general

manager, told plaintiff that her first job was to plan the company party. Id. Coffey told plaintiff,

"what happens at the work parties stays at the work parties," and that Coffey wished his wife would

not be at the party, or that she would be drunk so that he could do whatever he wanted at the party.

Id. at 2-3. Soon after plaintiff's employment with defendant began, Coffey began making lewd

comments and sending lewd, pornographic, and sexually explicit videos, texts, and private Facebook messages to plaintiff. Id. at 3. Coffey would regularly walk into the office in front of her and say that he is the sexiest man alive and that he "loves being a pervert." Id. Coffey also had a wind-up toy penis that he put on plaintiff's desk on several different occasions. Id.

Plaintiff complained multiple times to Carrie Verrill, defendant's human resources manager, who is also Coffey's sister, about Coffey's conduct. Id. In response, Verrill would tell plaintiff to "stay away" from Coffey. Id. Plaintiff was also sexually harassed by one of defendant's employees named Bob. Id. Bob would put his hands on plaintiff's back and, on two different occasions, he snapped plaintiff's bra strap. Id. Plaintiff complained to Verrill about the sexual harassment by Bob, but Bob would continue to touch plaintiff's back and hug her. Id. When plaintiff would complain to Verrill about the sexual harassment that she suffered during her employment with defendant, Verrill would make her feel like the sexual harassment was plaintiff's fault. Id.

Verrill and Coffey began to retaliate against plaintiff after her complaints of sexual harassment. Id. at 4. For example, after plaintiff's complaints, Verrill told her that she was "too cute" and was no longer allowed to wear yoga pants or shorts to the office. Id. However, other of defendant's employees were still allowed to wear yoga pants and shorts. Id. When plaintiff was hired, Coffey told her that there was no dress code at the office. Id. Plaintiff complained to Verrill about the retaliation and continued sexual harassment but, the next day, Coffey made an inappropriate comment in the office and looked at plaintiff and said, "oh no don't say that around her, the saint is present." Id. Less than a week later, plaintiff was demoted, she was changed from salary to hourly, her pay was cut in half, she was told she could not use her cell phone at work anymore, and all of her things were moved to another location without her knowledge. Id. Coffey

told plaintiff that she was being punished and could try to "work her way back up." Id. The next Tuesday, May 23, 2017, plaintiff was terminated by Verrill and told it "just wasn't working out." Id.

## II.

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. "To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" Doe v. Woodard, 912 F.3d 1278, 1299 (10th Cir. 2019) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true, and [the court] must liberally construe the pleadings and make all reasonable inferences in favor of the non-moving party." Id. (internal citation omitted).

## III.

Defendant argues that, under the Twombly/Iqbal pleading standard of Rule 12(b)(6), plaintiff's allegations amount only to "a mechanical recitation of the elements of her [intentional infliction of emotional distress] claim." Dkt. # 9, at 1. Defendant further argues that plaintiff's allegations fail to meet the second and fourth elements of an intentional infliction of emotional distress claim, namely that defendant's conduct was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," and that plaintiff's distress was not "so severe that no

reasonable [person] could be expected to endure it." Id. at 5 (citing Kraszewki v. Baptist Med. Ctr. of Okla., Inc., 916 P.2d 241, 248 n.25 (Okla. 1996), Computer Publ'n, Inc. v. Welton, 49 P.3d 732, 736 (Okla. 2002)). Defendant argues that plaintiff "does not specify which actions or conduct by [defendant] purportedly support her [intentional infliction of emotional distress] claim." Dkt. # 9, at 6. Plaintiff responds that Oklahoma law has recognized that "severe and pervasive sexual harassment precludes dismissal of intentional infliction of emotional distress claims," and that "[p]laintiff has alleged facts sufficient to support her [intentional infliction of emotional distress] claim." Dkt. # 11, at 2. Plaintiff further argues that Coffey's "authority to terminate her employment" meets the standard of extreme and outrageous conduct to assert an intentional infliction of emotional distress claim under Oklahoma law. Id. at 3.

Oklahoma courts have recognized a cause of action for intentional infliction of emotional distress, also known as the tort of outrage. See Gaylord Entm't Co. v. Thompson, 958 P.2d 128, 149 (Okla. 1998). The action is governed by the narrow standards laid out in the Restatement Second of Torts, § 46. Id. In Breeden v. League Servs. Corp., 575 P.2d 1374 (Okla. 1978), the Oklahoma Supreme Court explained:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Id. at 1376. To state a claim, a plaintiff must allege that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe."

Schovanec v. Archdiocese of Oklahoma City, 188 P.3d 158, 175 (Okla. 2008) (quoting Computer Publ'ns, 49 P.3d at 735). Under Oklahoma law, the trial court must assume a "gatekeeper role" and make an initial determination that the defendant's conduct "may be reasonably regarded as sufficiently extreme and outrageous to meet the Restatement § 46 standards." Trentadue v. United States, 397 F.3d 840, 856 n.7 (10th Cir. 2005) (applying Oklahoma law). If reasonable persons could reach differing conclusions in the assessment of the disputed facts, the Court should submit the claim to the jury to determine whether the defendant's conduct could result in liability. Id. The Court is to make a similar threshold determination with regard to the fourth prong, the presence of severe emotional distress. Id.

In cases arising out of the workplace, Oklahoma appellate courts have found that a defendant engaged in extreme and outrageous conduct only when that defendant intentionally and persistently engaged in a course of conduct that harmed the plaintiff. See Computer Publ'ns, 49 P.3d at 736 (claim should have been submitted to a jury when plaintiff presented evidence that harassment lasted more than two years and caused plaintiff to quit her job, move, and repeatedly change phone numbers); Miner v. Mid-America Door Co., 68 P.3d 212, 223-24 (Okla. Civ. App. 2002) (employer's alleged failure to reassign the plaintiff after learning of workplace harassment, even if unreasonable, was not extreme and outrageous); Gabler v. Holder & Smith, Inc., 11 P.3d 1269, 1280 (Okla. Civ. App. 2000) (noting that workplace harassment rarely rises to the level of extreme and outrageous conduct); Mirzaie v. Smith Cogeneration, Inc., 962 P.2d 678, 682-83 (Okla. Civ. App. 1998) (employer's conduct was not extreme and outrageous when, inter alia, the plaintiff's manager made derogatory sexual remarks about the plaintiff, woke plaintiff up in the middle of the night to do unnecessary work, and terminated him two hours before his wedding); Zahorsky v. Community

Nat'l Bank of Alva, 883 P.2d 198, 199-200 (Okla. Civ. App. 1994) (employer not liable for intentional infliction of emotional distress when an employee forced the plaintiff to have sex with him and employer failed to fire the employee, even though the employer allegedly knew about the conduct).

Plaintiff cites two cases for the proposition that she was sexually harassed, discriminated against, and retaliated upon to the point of giving rise to an intentional infliction of emotional distress claim. Dkt. # 11, at 3-4. First, plaintiff cites Derijk v. Southland Corp., 313 F. Supp. 2d 1168 (D. Utah 2003). In that case, a supervisor at a 7-Eleven convenience store made "offensive sexual comments and advancements on a regular basis, inappropriately touched and kissed [plaintiffs], and contacted [plaintiffs] at home and other places of employment." Id. at 1170-71. On a motion for partial summary judgment, the district court held that there was a genuine issue of material fact as to whether defendant's conduct rose to the level of extreme and outrageous. Id. at 1177. Despite the fact that the court applied Utah law, and not Oklahoma law, Derijk is distinguishable from this case. In Derijk, the manager engaging in sexual misconduct did so against multiple plaintiffs over a period of years. Id. at 1171-73. In this case, defendant's employees' alleged misconduct was over a period of three months. Dkt. # 2-1, at 3-4. Further, Oklahoma courts have dismissed claims for intentional infliction of emotional distress when other defendants' conduct was more intentional and over a longer period of time than defendant's employees' conduct. See Mirzaie, 962 P.2d at 682-83 (plaintiff called in the middle of the night and terminated two hours before his wedding to intimidate him into dismissing his lawsuit); Zahorsky, 883 P. 2d at 199 (employee forced plaintiff "to have sex with him against her will at least seven times").

Plaintiff also cites <u>Baker v. Weyerhaeuser Co.</u>, 903 F.2d 1342 (10th Cir. 1990). In that case, the Tenth Circuit, applying Oklahoma law, affirmed a jury verdict of intentional infliction of emotional distress based upon a Title VII claim. <u>Id.</u> at 1347-48. However, in that case, the plaintiff alleged that the defendant's employee "severely and repeatedly sexually harassed [the plaintiff], <u>as well as many other female employees, over a prolonged period of time.</u>" <u>Id.</u> at 1347 (emphasis added). In that case, defendant's primary argument was that liability could not be imputed to it because it did not affirm its employee's conduct. <u>Id.</u> This is distinguishable from plaintiff's case. As stated above, plaintiff was harassed over a period of three months, and plaintiff is not alleging that other of employees were sexually harassed. <u>See</u> Dkt. # 2-1, at 3-4.

In summary, plaintiff's claim falls short of the Oklahoma legal standard for extreme and outrageous conduct as required for a valid intentional infliction of emotional distress claim. Accordingly, the Court need not reach defendant's second argument that plaintiff failed to allege that she suffered severe emotional distress.

**IT IS THEREFORE ORDERED** that defendant Economy Supply, Inc.'s motion for partial dismissal (Dkt. # 9) is **granted**, and plaintiff's claim of intentional infliction of emotional distress is hereby dismissed.

**DATED** this 30th day of August, 2019.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE