# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KYLIE GARNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-CV-0372-CVE-FHM |
| | ) |
| ECONOMY SUPPLY, INC., | ) |
| an Oklahoma For Profit Business Corporation, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is defendant Economy Supply, Inc.'s motion for leave to amend answer to add affirmative defense of after-acquired evidence (Dkt. # 25). Plaintiff filed a response (Dkt. # 30) and defendant filed a reply (Dkt. # 34). In this Title VII employment discrimination and retaliation case, defendant claims that it was unaware until recently that plaintiff had been browsing for other job opportunities while at work, well after the twenty-one day period required to amend its answer as a matter of course. Defendant claims that plaintiff's use of company property for personal use violated company policy and would have been grounds for her termination. It now seeks to amend its answer pursuant to a Federal Rule of Civil Procedure 15, ends-of-justice leave to amend. Plaintiff argues that the after-acquired evidence does not meet the "good cause" requirement of Rule 16(b)(4) or the requirements of Rule 15.

# I.

## Background

The contents of plaintiff's state court petition (Dkt. # 2-1) are: Plaintiff began her employment with defendant on February 15, 2017. Dkt. # 2-1, at 2. On her second day of work, Tray Coffey, defendant's general manager, told plaintiff that her first job was to plan the company party. Id. Coffey allegedly told plaintiff, "what happens at the work parties stays at the work parties," and that Coffey wished his wife would not be at the party, or that she would be drunk so that he could do whatever he wanted at the party. Id. at 2-3. Soon after plaintiff's employment with defendant began, Coffey allegedly began making lewd comments and sending lewd, pornographic, and sexually explicit videos, texts, and private Facebook messages to plaintiff. Id. at 3. Coffey would allegedly regularly walk into the office in front of her and say that he is the sexiest man alive and that he "loves being a pervert." Id. Coffey also allegedly had a wind-up toy penis that he put on plaintiff's desk on several different occasions. Id.

Plaintiff complained multiple times to Carrie Verrill, defendant's human resources manager, who is also Coffey's sister, about Coffey's conduct. Id. In response, Verrill would tell plaintiff to "stay away" from Coffey. Id. Plaintiff was also allegedly sexually harassed by one of defendant's employees named Bob. Id. Bob would allegedly put his hands on plaintiff's back and, on two different occasions, he allegedly snapped plaintiff's bra strap. Id. Plaintiff complained to Verrill about the alleged sexual harassment by Bob, but Bob would continue to touch plaintiff's back and hug her. Id. When plaintiff would complain to Verrill about the sexual harassment that she suffered during her employment with defendant, Verrill would allegedly make her feel like the sexual harassment was plaintiff's fault. Id.

Verrill and Coffey allegedly began to retaliate against plaintiff after her complaints of sexual harassment. Id. at 4. For example, after plaintiff's complaints, Verrill allegedly told her that she was "too cute" and was no longer allowed to wear yoga pants or shorts to the office. Id. However, other of defendant's employees were still allowed to wear yoga pants and shorts. Id. When plaintiff was hired, Coffey told her that there was no dress code at the office. Id. Plaintiff complained to Verrill about the retaliation and continued sexual harassment but, the next day, Coffey allegedly made an inappropriate comment in the office and looked at plaintiff and said, "oh no don't say that around her, the saint is present." Id. Less than a week later, plaintiff was demoted, her status was changed from salary to hourly, her pay was cut in half, she was told she could not use her cell phone at work anymore, and all of her things were moved to another location without her knowledge. Id. Coffey told plaintiff that she was being punished and could try to "work her way back up." Id. The next Tuesday, May 23, 2017, plaintiff was terminated by Verrill and told it "just wasn't working out." Id.

Plaintiff filed her petition in state court on June 20, 2019. Dkt. # 2-1. Defendant removed the case to this Court on July 10, 2019. Dkt. # 2. Plaintiff alleged sexual harassment, retaliation, and gender discrimination, all in violation of Title VII of the Civil Rights Act of 1964. Dkt. # 2-1. Plaintiff also alleged intentional infliction of emotional distress, which the Court dismissed in an opinion and order dated August 30, 2019. Dkt. # 15. Defendant filed its answer on September 13, 2019, asserting eleven affirmative defenses. Dkt. # 17, at 6-7. However, defendant did not include the doctrine of after-acquired evidence as an affirmative defense.

The joint status report was submitted on August 16, 2019, Dkt. # 13, before defendant's answer. In it, plaintiff summarized her case, id. at 1-2, defendant denied all of plaintiff's allegations, and alleged:

> Plaintiff's continued failure and refusal to perform her job duties, coupled with her failure to comply with company policies to the point that her job performance was hindered, eventually lead to her termination.
>
> Plaintiff was counseled on numerous occasions to cease all personal use of the company computer and of her cell phone during business hours, and [p]laintiff refused to comply. In further violation of company policy, [p]laintiff actively pursued alternative business or employment opportunities during business hours using company resources. Finally, [p]laintiff made unauthorized purchases using the company credit card, even having items shipped directly to her home.

Dkt. # 13, at 3.

In its answer, defendant responded in part to plaintiff's allegations by stating that

> [d]efendant admits that [p]laintiff was transferred to another position at a reduced compensation due to her failure and refusal to perform her job duties resulting in financial damage to [d]efendant, that [d]efendant informed [p]laintiff of [d]efendant's cell phone and computer use policies prohibiting personal use during business hours.

Dkt. # 17, at 4.

## Motion to Amend and Response

In its motion to amend, defendant claims that, in the course of discovery, it uncovered evidence that

> [p]laintiff used [defendant's] computer(s), Wi-Fi, and its internet service to search for alternative employment and to submit job applications. Plaintiff performed these activities at the same time she was supposed to be performing her work duties for Economy and was being compensated by [defendant] for [the] same. Had [defendant] been aware of [p]laintiff's actions at the time, [p]laintiff would necessarily have been terminated.

4

Dkt. # 25, at 1. Plaintiff had applied for unemployment benefits before the Oklahoma Employment Security Commission (OESC). Dkt. # 30-1. Her claim was granted; Economy appealed. Dkt. # 30-3. Thereafter, Economy's appeal before the OESC was granted, and plaintiff's claim was denied. Id. Defendant claims that its counsel did not become aware until March 2, 2020 of the contents of a hearing transcript of defendant's human resources manager during the OESC appeal. Dkt. # 25, at 2. Defendant asserts that, once it became aware of this transcript, it immediately informed plaintiff's counsel that it intended to amend its answer to include the defense of after-acquired evidence. Plaintiff's counsel took the deposition of defendant's human resources manager and its principal on March 6, 2020. Id.

In her response, plaintiff argues that the deadline to amend pleadings was November 18, 2019, pursuant to the Court's scheduling order. Dkt. # 30, at 2. Plaintiff also argues that the discovery deadline was March 20, 2020, and defendant had notice of its own OESC hearing testimony by its agent, the human resources manager, for "almost three years." Id. Plaintiff argues that granting defendant leave to amend does not meet the "good cause" standard of Federal Rule of Civil Procedure 16(b)(4), and that she will be unduly prejudiced under Federal Rule of Civil Procedure 15(a) if defendant is granted leave to amend its answer. Id. at 4-8. Plaintiff argues that "[d]efendant began claiming that [p]laintiff violated its Computer & Internet Usage Policy approximately one week after [p]laintiff's termination[, but] [d]efendant filed its [a]nswer . . . over two years later—and yet failed to assert an after-acquired evidence defense." Id. at 5. Plaintiff also argues that "[d]efendant took [p]laintiff's deposition on January 27, 2020, well before [d]efendant first informed [p]laintiff that it would be asserting the after-acquired evidence defense . . . and

5

therefore [p]laintiff's counsel could not ask [p]laintiff what she knew about the allegations currently at issue." Id. at 8.

## II.

In McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995), the Supreme Court considered the bearing on liability and damages of evidence discovered by an employer after the employee had already been terminated in violation of the Age Discrimination in Employment Act of 1967 (ADEA). Id. at 354. The Court held that after-acquired evidence, while not relieving the employer of liability, is relevant to the determination of damages. Id. Because Congress created the ADEA to eliminate discrimination in the workplace, "[i]t would not accord with this scheme if after-acquired evidence of wrongdoing that would have resulted in termination operates, in every instance, to bar all relief for an earlier violation of the Act." Id. at 358. Therefore, an employer may be liable for a wrongful discharge of its employee, although the Court upheld the admissibility of after-acquired evidence as it relates to the issue of damages. Id. at 362. Under "McKennon, information that an employer learns after it has discharged an employee is not relevant to the determination of whether an employer violated Title VII because it necessarily played no role in the actual decision." Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 554 (10th Cir. 1999).

Courts are split after McKennon as to whether after-acquired evidence is an affirmative defense or a limitation on damages. Compare Sellers v. Mineta, 358 F.3d 1058, 1064 (8th Cir. 2004) ("an employee's post-termination conduct can, in some circumstances, limit an employee's remedies for wrongful discharge"), with Thomas v. Home Depot U.S.A., Inc., 792 Fed. App'x 722, 725-26

6

(11th Cir. 2019) (unpublished)[1] (noting that after-acquired evidence is an affirmative defense). However, the Tenth Circuit has referred to the after-acquired evidence doctrine as a limitation on damages; it has never explicitly referred to it is an affirmative defense. See Perkins v. Silver Mountain Sports Club and Spa, LLC, 557 F.3d 1141, 1145 (10th Cir. 2009) ("[T]he after-acquired evidence may then be considered to limit the damages remedy available to the wrongfully terminated employee.").

In Perkins, an employee sued her employer alleging that she was fired because she was pregnant and requested leave. Id. at 1143. After the employee was terminated, the employer discovered that the employee had used company funds to pay her phone bill. Id. at 1144. The Tenth Circuit first considered the standard for courts to allow after-acquired evidence at trial: "First, the employer must establish 'that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of discharge.'" Id. at 1145 (quoting McKennon, 513 U.S. at 362-63). "Second, and only after an employer has met this initial showing, the after-acquired evidence may then be considered to limit the damages remedy available to the wrongfully terminated employee." Id. (quoting McKennon, 513 U.S. at 362). The Tenth Circuit then held that the district court did not commit plain error in finding that "the after-acquired evidence was irrelevant to the issue of liability and reserv[ing] a final determination of admissibility until it became relevant to the question of damages." Id. at 1149.

---

[1] Unpublished decisions are not precedential, but they may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

The Tenth Circuit has not appeared to have held that after-acquired evidence is an affirmative defense; if it is a limitation on damages, defendant need not amend its answer to include the after-acquired evidence defense.

### III.

However, even if after-acquired evidence is an affirmative defense, the Court finds that defendant's motion meets the standard for amendment under Federal Rule of Civil Procedure 15. "Federal Rule of Civil Procedure 15(a) provides that, after a responsive pleading has been served, a party may amend its pleading 'only by leave of court or by written consent of the adverse party.'" Minter v. Prime Equipment Co., 451 F.3d 1196, 1204 (10th Cir. 2006). "The Rule specifies that 'leave shall be freely given when justice so requires.'" Id. "The purpose of the Rule is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" Id. (quoting Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 456 (10th Cir. 1982)). As the Supreme Court has held:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962).

"While Rule 15 governs amendments to pleadings generally, Rule 16 governs amendments to scheduling orders." Bylin v. Billings, 568 F.3d 1224, 1231 (10th Cir. 2009) (citing Fed. R. Civ. P. 16(b)). "Rule 16 only allows such amendments for 'good cause,' Fed. R. Civ. P. 16(b)(4), an arguably more stringent standard than the standards for amending a pleading under Rule 15." Id.

8

Federal Rule of Civil Procedure 16(b)(4) states that "[a] scheduling order may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The Tenth Circuit has held that "[a]fter a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n, 771 F.3d 1230, 1240 (10th Cir. 2015).

### Good Cause

Plaintiff argues that defendant has not demonstrated "good cause" for amending its answer. Dkt. # 30, at 4. Plaintiff argues that, although defense counsel claims it did not become aware of plaintiff's job search until after she was terminated, and that it did not become aware of plaintiff's activities until receiving the recorded hearing of plaintiff's appeal of the denial of her claim with OESC, defendant's human resources manager wrote a letter to the OESC dated June 1, 2017, that alleged that plaintiff "continued to shop online and do Facebook, text and apply for other jobs . . . . She was unwilling to do her job and was terminated on [May 23, 2017.]" Dkt. # 30, at 4-5. Plaintiff argues that defendant became aware that plaintiff violated its "Computer & Internet Usage Policy approximately one week after [p]laintiff's termination[, but] [d]efendant filed its [a]nswer on September 13, 2019—over two years later—and yet failed to assert an after-acquired evidence defense." Id. at 5. For the argument that defendant was aware of plaintiff's alleged misconduct, plaintiff points to defense counsel's letter to OESC dated July 7, 2017, appealing the award of unemployment benefits to plaintiff, arguing that plaintiff had committed misconduct and, therefore,

9

should be denied unemployment benefits. Id.[2] Plaintiff further argues that defense counsel should have been aware of plaintiff's job search history because it sent initial disclosures including that job search history. Id. at 6.

Although defense counsel may have been unaware of the actual testimony regarding plaintiff's activities during OESC proceedings, this is irrelevant because defense counsel was aware of the facts underlying the misconduct, as outlined in its July 7, 2017 letter. However, plaintiff herself had notice of these facts, because plaintiff was a party to the OESC proceedings, and defendant included the underlying facts in its joint status report, its answer, and its initial disclosures. Further, plaintiff knew that her conduct violated company policy. See Dkt. # 25-2, at 2 (signed policy manual specifying that "[e]mployees are prohibited from engaging in any other business activity whether or not such activity is pursued for gain, profit, or other advantages without written consent from the Company"). Defendant neglected to add the doctrine of "after-acquired evidence" in the section of its answer titled "Affirmative Defenses." Defendant was clearly aware of, and gave notice of, these facts, even if it did not include an after-acquired evidence affirmative defense and even if its counsel was allegedly "unaware."[3] Defense counsel claims that it allegedly did not obtain all of the OESC files including the hearing transcript until March 2, 2020, and, at that point, it became necessary to include an after-acquired evidence defense. See Dkt. # 34, at 5. Defense counsel clearly knew of the after-acquired evidence long before March 2, 2020, and it failed to

---

[2] This letter negates defense counsel's argument that it did not know of the after-acquired evidence until March 2, 2020.

[3] Defense counsel is an agent of defendant. Whether defense counsel knew about the OESC testimony per se is irrelevant because defendant's agent gave this testimony. It also appears defense counsel knew of the after-acquired evidence no later than its July 7, 2017 letter.

include that defense in its answer. However, the Court finds that there is good cause for defendant to amend its answer to include the doctrine of after-acquired evidence because plaintiff had actual notice of her misconduct, the underlying facts of which defendant raised in the joint status report, answer, and initial disclosures.

**Rule 15 Factors**

The Court next reviews the Federal Rule of Civil Procedure 15 factors for allowing the after-acquired evidence of plaintiff's alleged misconduct. Leave to amend should be "freely given when justice so requires." Fed. R. Civ. P. 15(a). Here, it is just to give defendant leave to amend its answer, because defendant included the facts underlying her violation of company policies in its joint status report, answer, and initial disclosures, but neglected to include the doctrine of after-acquired evidence in its affirmative defenses.

The Court still must find that plaintiff has not been unduly prejudiced, and that defendant has not exercised "undue delay, bad faith or dilatory motive, . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman, 371 U.S. at 182. Plaintiff will not be unduly prejudiced should defendant be given leave to amend its answer. Plaintiff knew of her own policy-offending conduct while she was employed—defendant allegedly informed her that she was violating company policy by using her cell phone and computer for personal use when it demoted her. See Dkt. # 17, at 4. Moreover, she knew of defendant's discovery of this conduct in June 2017, as raised in the OESC proceedings. Plaintiff argues that she will be prejudiced because her counsel was not allowed to question her about her alleged misconduct during her deposition. Dkt. # 30, at 8. However, a plaintiff's lawyer does not routinely question plaintiff in a deposition about damaging

11

information, other than to elicit information to defeat a motion for summary judgment. In addition, plaintiff had time to be deposed by her counsel if it wished after defendant informed her on March 2, 2020, of its intent to seek leave to amend its answer. Although the evidence is prejudicial, it is not unfairly so because plaintiff is still able to respond to defendant's after-acquired evidence defense. See Bylin v. Billings, 568 F.3d 1224, 1229 (10th Cir. 2009) ("Typically, courts will find prejudice only when an amendment unfairly affects non-movants in terms of preparing their response to the amendment.") (internal quotation omitted).

There is no evidence that defendant exercised undue delay, bad faith, or dilatory motives by failing to include after-acquired evidence as an affirmative defense. Defendant made plaintiff aware of the after-acquired evidence prior to the depositions of its human resources manager and president on March 6, 2020. See Dkt. ## 25, at 4; 34, at 3. During this time, plaintiff could have been deposed by her counsel, but her counsel chose not to do so.

Defense counsel may have been negligent in not including after-acquired evidence as an affirmative defense per se in its answer, but this is not evidence of bad faith. Further, defendant has not previously amended its answer, so it has not committed "repeated failure to cure deficiencies by amendments previously allowed." Foman, 371 U.S. at 182. Finally, amendment would not be futile—the after-acquired evidence is central to defendant's defense, as demonstrated by the joint status report, answer, and initial disclosures. The Court finds that defendant meets the Rule 15 standard for amending its answer.

In summary, plaintiff was on notice that her conduct violated company policy. She knew about her alleged misconduct during the OESC proceedings, including the letter from defendant's counsel. The Court thus finds that defendant's after-acquired evidence theory is relevant as a

limitation on damages; if defendant wishes to amend its answer to include after-acquired evidence as an affirmative defense, it may do so by March 31, 2020.

**IT IS THEREFORE ORDERED** that defendant's motion to amend answer to add affirmative defense of after-acquired evidence (Dkt. # 25) is **granted**. Defendant may amend its answer to include after-acquired evidence as an affirmative defense no later than **March 31, 2020**.

**DATED** this 27th day of March, 2020.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE